IN THE UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF ALABAMA
EASTERN DIVISION

| | |
|---|---|
| KEVIN COURTWRIGHT          ) | |
| )| |
| PLAINTIFF,          ) | |
| ) | |
| v.          ) | |
| ) | CASE NO. 3:25-cv-00839-SMD |
| CHRISTOPHER B. ROBERTS,          ) | |
| PRESIDENT OF AUBURN          ) | |
| UNIVERSITY IN HIS OFFICIAL          ) | |
| AND INDIVIDUAL CAPACITIES,          ) | |
| AND JIM CARROLL, VICE          ) | |
| PRESIDENT OF FACILITIES          ) | |
| MANAGEMENT, AND LOREN          ) | |
| WINN, FACILITIES HUMAN          ) | |
| RESOURCES DIRECTOR, IN          ) | |
| THEIR INDIVIDUAL          ) | |
| CAPACITIES,          ) | |
| ) | |
| DEFENDANTS.          ) | |

**ANSWER OF DEFENDANTS**
**CHRISTOPHER B. ROBERTS, JIM CARROLL AND LOREN WINN**

Defendants Roberts, Carroll and Winn ("Defendants") answer the complaint (Doc. 1) as follows:

**FIRST DEFENSE**

Response to the Introduction and the respective numbered paragraphs of the complaint:

Introduction

Defendants admit that Plaintiff Courtwright worked as a Landscape Supervisor at Auburn University ("Auburn"); that he posted on social media, including regarding the killing of Charlie Kirk; that some of his social media posts were inflammatory and threatening; that he brings this action under the provisions of law cited; and that he seeks the stated relief. Otherwise the averments of the Introduction are denied.

1.-3.  Jurisdiction and venue are not contested, but Defendants deny having violated any law.

4.  Admitted

5.  Admitted that Defendant Roberts is the President of Auburn University and that his acts in that capacity are under color of law. Otherwise denied.

6.  Admitted, except that it is denied that Defendant Carroll is liable in his individual capacity.

7.  Admitted, except that it is denied that Defendant Winn is liable in her individual capacity.

8.  Admitted

9.  Admitted

10.  Admitted

11. Admitted, except that it is denied that Kimberly Courtwright "became a target."

12. Admitted

13. Admitted that Kirk was a national figure who made statements regarding political and social issues that spurred public debate, and that his life and death were the subject of social media commentary. Otherwise denied.

14. Admitted that social media platforms were very active regarding Kirk's death. The publication cited in footnote 1 speaks for itself and no response is required.

15. Defendants are without knowledge or information sufficient to form a belief about the truth of what Plaintiff subjectively "understood" or "disagreed with."

16. Defendants are without knowledge or information sufficient to form a belief about the truth of the averments of this paragraph.

17. Defendants are without knowledge or information sufficient to form a belief about the truth of the averments as to what Plaintiff subjectively found offensive, whether Plaintiff is an ordained minister, or what he subjectively did or did not disagree with. The publications cited in footnotes 2 and 3 speak for themselves and no response is required.

18. Defendants are without knowledge or information sufficient to form a belief about the truth of the averments as to what beliefs Plaintiff subjectively holds or what statements of Kirk (or others) he subjectively disagreed with. The publications cited in footnotes 4-8 speak for themselves and no response is required.

19. Defendants admit that Plaintiff has used Facebook but are without knowledge or information sufficient to form a belief about the truth of the remaining averments of this paragraph that involve Plaintiff's subjective state of mind.

20. Defendants admit that on September 10, 2025, Plaintiff made numerous Facebook posts or re-posts relating to Kirk and his death, including the quoted re-post. Otherwise denied.

21. Admitted that Plaintiff posted the quoted statement. Otherwise denied.

22. Defendants are without knowledge or information sufficient to form a belief about the truth of the averments as to what Plaintiff subjectively intended to "describe", how he subjectively "considered" Kirk's views, how he subjectively "used" social media, or what he subjectively "hoped" to accomplish.

23. Defendants admit that Plaintiff re-posted the quoted material, but are without knowledge or information sufficient to form a belief about the truth of the averments as to what the re-post was subjectively intended to show.

24. Defendants admit that Plaintiff came to work on September 11, 2025, but are without knowledge or information sufficient to form a belief about the truth of the remaining allegations of this paragraph.

25. Admitted that Messrs. Hardman and Forehand met with Kim Courtwright on September 15, 2025, questioned her about Plaintiff, and that she attempted to assure them that Plaintiff was not a threat. Otherwise denied.

26. Admitted except as to the last sentence. As to that averment, Defendants admit that Kim Courtwright stated that there was nothing to be concerned about with Plaintiff because he was a good man.

27. Admitted

28. Admitted

29. Admitted

30. Admitted that Kim Courtwright stated that her husband would never hurt anyone, and that she suggested that the questioners misunderstood Plaintiff's Facebook post.

31. Admitted except as to the last sentence. As to that averment, Defendants admit that Plaintiff stated that he had no violent intent.

32. Admitted that on September 16, 2025, Plaintiff went to Defendant Winn's office and that the ensuing conversation included mention of Plaintiffs'

25373831.1

Facebook posting and his question about whether he was going to be fired. Otherwise denied.

33. Admitted that Defendant Winn told Plaintiff that Auburn was not inclined to precipitous action, but that there was a chance of termination, and that the decision would be up to management. Otherwise denied.

34. Admitted

35. Admitted that Plaintiff was escorted to a conference room for a meeting with Defendant Carroll, Defendant Winn, and Officer Stewart. Otherwise denied.

36. Admitted that the September 17, 2025 meeting was a pre-termination meeting in which Plaintiff was told that he was being placed on administrative leave in connection with a Group 1 violation; that the basis for that decision was discussed; and that Plaintiff stated his position that he was not a threat and should not be disciplined. Otherwise denied.

37. Admitted

38. Admitted that Defendant Roberts made the quoted statement on September 17, 2025. Otherwise denied.

39. Admitted that Defendant Carroll, with the participation of Defendant Winn, called Plaintiff on September 22, 2025 to advise that he was being terminated.

40. Admitted that a termination letter dated September 22, 2025, was sent to Plaintiff and that the letter, which speaks for itself, included the bullet points set out in this paragraph. Otherwise denied.

41. Admitted

42. Denied. For further answer, Defendants state that the decision to terminate Plaintiff was made not based upon the content of any particular post, posts, or re-posts but instead based on a thorough, holistic assessment of Plaintiff's threat potential that took into account his overall posting activity on September 10, 2025 along with other relevant information. In addition or in the alternative, Defendants state that, even if Plaintiff's speech enjoyed constitutional protection due to the nature of certain of its content, there was no causal connection between the content that warranted such protection and Plaintiff's termination.

43. Admitted that The Auburn Plainsman published the quoted passage. Otherwise denied.

44. Denied. For further answer, see response to paragraph 42.

45. Admitted that, in his role as a Landscape Supervisor, Plaintiff had no direct control or influence over the academic process. Otherwise denied.

46. Denied

47. Denied that Plaintiff is entitled to any relief.

48. Denied

25373831.1

49. Denied

50. No response required.

51. Admitted

52. Denied that Plaintiff was terminated on the basis of speech, or content of speech, that enjoyed constitutional protection. For further answer, see response to paragraph 42.

53. Admitted, but denied that Plaintiff was terminated on the basis of speech, or content of speech, that enjoyed constitutional protection. For further answer, see response to paragraph 42.

54. Admitted that Plaintiff may have published statements about Kirk that would be constitutionally protected, but denied that any published statement or statements that were considered in the threat assessment that informed the decision to terminate Plaintiff enjoyed constitutional protection.

55. Admitted that Plaintiff may have published statements about Kirk that would be constitutionally protected, but denied that any published statement or statements that were considered in the threat assessment that informed the decision to terminate Plaintiff enjoyed constitutional protection.

56. No response required.

57. No response required.

58. No response required.

25373831.1

59. Admitted that speech does not necessarily lose constitutional protection because it might be considered inappropriate or offensive, but denied that Plaintiff's termination was based on any speech that, in the relevant context, enjoyed constitutional protection. For further answer, see response to paragraph 42.

60. Denied. For further answer, see response to paragraph 42.

61. Admitted that public universities are often regarded as occupying a special place protecting free speech, and further admitted that a public university has an obligation to protect its students and the entire university community from danger and harm when threatened, as in the present circumstances involving Plaintiff. Otherwise denied.

62. Denied that Plaintiff has an absolute First Amendment right to make statements about a public figure regardless of the nature and content of the statement and the context in which it is made.

63. Admitted that any published statement or statements that were considered in the threat assessment that informed the decision to terminate Plaintiff were not made pursuant to his official duties, but denied that in the relevant context those statements enjoyed constitutional protection.

64. Denied. For further answer, see response to paragraph 42.

65. Admitted that Plaintiff was not a policymaking employee at Auburn, but otherwise denied. For further answer, see response to paragraph 42.

66. Denied

67. Admitted that Plaintiff's termination was an official act by the Auburn decision-maker. Otherwise denied.

68. Denied

69. Denied that there is any causal connection between Plaintiff's termination and any constitutionally protected speech, and denied that Defendants engaged in any retaliation against Plaintiff. For further answer, see response to paragraph 42.

70. Denied

71. Denied

72. Denied

73. Defendants are without knowledge or information sufficient to form a belief about what Plaintiff subjectively "sought" to accomplish through his Facebook posts. Otherwise denied.

74. Denied

75. Denied

76. Denied

77. Denied that there was malicious conduct and denied that Plaintiff is entitled to damages, punitive or otherwise.

78. Denied

79. Denied

80. Denied that Plaintiff is entitled to any of the requested relief.

For answer to Plaintiff's "Request for Relief," Defendants deny that Plaintiff is entitled to any relief, including the relief requested in paragraphs VII. 1.-7.

## ADDITIONAL AND AFFIRMATIVE DEFENSES

1. Defendants in their individual capacities are protected from the imposition of money damages based on qualified immunity.

2. Defendant Roberts in his official capacity is entitled to the immunity provided by the Eleventh Amendment to the Constitution of the United States.

3. Even if Plaintiff engaged in speech on a matter of public concern, Plaintiff's interest in commenting upon such matters does not, under the circumstances, outweigh Auburn University's (and by extension Defendants') interest as an employer in promoting the efficiency of public services it performs. *See Maggio v. Sipple*, 211 F.3d 1346, 1351 (11th Cir. 2000) (citing *Pickering v. Bd. of Educ. Of Township High Sch. Dist. 205, Will Cnty.*, 391 U.S. 563, 88 S. Ct. 1731 (1968)).

4. Even if Plaintiff engaged in constitutionally protected speech that was a motivating factor in the decision to terminate him, which Defendants deny, he would have been terminated regardless for legitimate reasons having nothing to do with speech that enjoyed constitutional protection.

11

5. Defendants deny that they are liable to Plaintiff in any respect and deny that he is entitled to any of the relief sought.

6. Any allegation of the complaint not expressly admitted is denied.

7. Defendants reserve the right to amend this answer to include additional defenses that may be identified during the course of this litigation.

Respectfully submitted on this 17th day of November, 2025.

*/s/ David R. Boyd*
Attorney for Defendants

**OF COUNSEL**

David R. Boyd
**BALCH & BINGHAM LLP**
1901 6th Avenue North, Suite 1500
Birmingham, Alabama 35203
Telephone: (205) 251-8100
Facsimile: (205) 226-8799
Email: dboyd@balch.com

## **CERTIFICATE OF SERVICE**

  I hereby certify that I have electronically filed the foregoing with the Clerk of the Court using the CM/ECF system and service will be perfected upon the following CM/ECF participant(s) electronically and/or that a copy of same was placed in the U.S. Mail, postage prepaid on this the 17th day of November, 2025:

Jon C. Goldfarb
L. William Smith
Christina M. Malmat
**WIGGINS, CHILDS, PANTAZIS, FISHER,
& GOLDFARB, LLC**
301 19th Street North
Birmingham, Alabama 35203
Telephone: (205) 314-0500
Facsimile: (205) 254-1500
jcg@wigginschilds.com
cmalmat@wigginschilds.com
wsmith@wigginschilds.com
*Attorney for Plaintiffs*

               */s/ David R. Boyd*
               Of Counsel

25373831.1